DANIEL COVEL & al. versus RUSSELL HART & als.
RUSSELL HART & als. versus DANIEL COVEL & al.

The owner of the land on both banks of a stream, together with the water
power created by a dam across it, having a tannery on one side and a saw-
mill on the other, conveyed the tannery, together with the land connected
with it, and also "a right to draw water from the saw-mill flume sufficient
to carry on the business of tanning in said yard," the grantee, "his heirs
or assigns to make or pay for one-fourth part of all necessary repairs on
the dam;" "to have the right to draw water as aforesaid, sufficient to carry
on the tanning in said yard in its various branches in common with" the
grantor; "to have the privilege of using more water than aforesaid, when
there shall be waste water running over or around the dam;" and the
grantor, "his heirs or assigns, is to have the right to increase machinery
or mills upon his privilege to any extent that he or they may choose, and
to use all the water except what has herein been conveyed for the use of
said tanyard, if he or they shall choose." In an action involving a con-
struction of the grant; — Held, —

1. That, by the terms of the deed, the grantee acquired an absolute and
prior right to the use of the quantity of water named;

2. That the grant was of a fixed measure of power to be used for any pur-
pose, and not to be confined to that of tanning; and

3. That the measure of power was restricted to that used or required, at
or about the date of the grant, "in carrying on tanning in said yard in its
various branches."

ON REPORT. The first case is

CASE for using more water than the defendants are alleg-
ed to be entitled to, and thereby depriving the plaintiffs
thereof.

The plaintiffs claim under a deed from Abraham Hill to
Nathaniel Rollins, dated Dec. 1, 1836, duly executed and
recorded, and represent and have the title of Rollins, while
the defendants represent and have the rights and title re-
served by Hill in the deed mentioned. This deed conveyed
the land on which the tannery is situated, and contained
certain clauses of which the following is a copy, viz. : —

"And the said Hill also conveys unto the said Rollins a
right to draw water from the saw-mill flume sufficient to
carry on the business of tanning in said yard. The said
Rollins or his heirs or assigns are to make one-fourth part

of all repairs necessary on said dam, or pay one-fourth part of all such sum or sums necessary to keep the same in repair. The said Rollins to have the right to draw water as aforesaid sufficient to carry on the tanning in said yard in its various branches in common with said Hill :— and the said Hill agrees that said Rollins may have the privilege of using more water than aforesaid when there shall be waste water running over or around the dam ; and the said Hill, his heirs or assigns, is to have the right to increase machinery or mills upon his privilege to any extent that he or they may choose, and to use all the water except what has herein been conveyed for the use of said tanyard, if he or they shall choose."

The plaintiffs allege that defendants, prior to date of suit, June 10, 1867, and within five years prior thereto, have drawn more water than they drew at the date of said deed, and were in the habit of drawing, and did frequently draw water from said flume, in such quantities that the plaintiffs could not work their tannery, and thereby prevented the plaintiffs from using the machinery in their said tannery and carrying on their said business, and that the gate of defendants in the common flume, being two feet lower than that of plaintiffs, they often drew and kept the water to that mark to the great injury of the plaintiffs.

If, on proof of these allegations, the action could be maintained, it was to stand for trial.

The second is a similar action, alleging that the defendants, Covel & al., use more water in carrying on their tannery than they are entitled to, and thereby depriving the plaintiffs of it.

The plaintiffs allege that the defendants have increased the amount, and mode in some respects, of the tanning business, since the date of the Abraham Hill deed ; that within the last six years, they have carried on more tanning business and used more water, than was carried on and used when said deed was executed and delivered ; which use of water is a damage to the plaintiffs.

If, upon proof of these allegations, the action could be maintained, it was to stand for trial.

*Wakefield, for Covel & al.*, cited *Ashley* v. *Pease*, 18 Pick., 286; *DeWitt* v. *Harvey*, 4 Gray, 486; *Jordan* v. *Mayo*, 41 Maine, 552; *Wyman* v. *Farrar*, 35 Maine, 64; *Kaler* v. *Beaman*, 49 Maine, 207; *Deshon* v. *Porter*, 38 Maine, 289.

*J. A. Peters & F. A. Wilson, for Hart & als.*

KENT, J.—These cases involve the construction of certain clauses in a deed, conveying rights in the water of a stream. The grantor, owning the whole power created by the dam across the stream, and having a tannery on one side and a saw-mill on the other, sold and conveyed the land on which the tannery was situated, and also conveyed to the grantee " a right to draw water from the saw-mill flume, sufficient to carry on the business of tanning in said yard. The said Rollins, (grantee,) or his heirs or assigns, are to make one-fourth part of all repairs necessary on said dam, or pay one-fourth part of all such sum or sums necessary to keep the same in repair. The said Rollins to have the right to draw water as aforesaid, sufficient to carry on the tannery in said yard in its various branches, in common with said Hill, (grantor,) and the said Hill agrees that said Rollins may have the privilege of using more water than aforesaid, when there shall be waste water running over or around the dam; and the said Hill, his heirs or assigns, is to have the right to increase machinery or mills upon his privilege to any extent that he or they may choose, and to use all the water, except what has herein been conveyed for the use of said tanyard if he or they shall choose."

The first question on which a decision is asked, is as to the priority of right in the use of the water. We have no doubt that this was a grant and conveyance to the grantee of an absolute and prior right to the use of the quantity of water named, whether that was a measured and limited quantity, or indefinite and unlimited. The grant is absolute

of a right to draw water from the saw-mill flume sufficient to carry on the business of tanning in said yard. That quantity, whatever it is, under the construction of the deed, the grantee is entitled to from the saw-mill flume, although, by drawing it, there may be not enough water left to work the saw-mill. This is evident from the reservation at the close, by the grantor, of a right to himself to use all the water except "what has herein been conveyed for the use of said tanyard." The tanyard has a right to the water granted to it whenever there is enough in the whole stream, and to take the whole, if necessary, in preference to the saw-mill or other machinery on the other part of the dam. The gates in the flume must be so constructed that this right may always be exercised by the owners of the tanyard.

But a more difficult question arises as to the extent of the grant, and the quantity of water to which the grantee is entitled by the deed. It is evident that it is either a grant of all the water which may thereafter be found to be necessary to carry on the business of tanning in the yard, however extended and whatever new or additional machinery or vats or other works may be introduced and used, even if they should require all the water of the stream; or it must be limited to the quantity necessary to carry on the business of tanning as it had been carried on and was carried on at the time of the giving the deed. The grant must be limited only by the size and capacity of the yard, and the will of the grantee as to future extensions, or it must be construed to be, in effect, the measure of the quantity to be used, and that measure fixed by the quantity then actually used or required in carrying on the business of tanning in "said yard."

The parties in this hearing have not discussed a question, which is often raised, and may be, perhaps, hereafter between these parties, — viz., whether the grant is of a fixed amount of water, to be used for any purpose, or whether it

is to be confined in the use to a specific object, — to wit, carrying on the tanning business, and no other. But this point may be of some importance in determining what the real intention of the parties to the deed was, as to the amount of power actually granted. Taking each of these views, and considering them in connection with the other provisions of the deed, to which we shall hereafter refer, we may, perhaps, be able to determine with which claim and construction they best agree.

We may well adopt the language of the Court in *Deshon* v. *Porter*, 38 Maine, 293, that "the principal question is what intention of the parties is to be derived from the language of the deed, taken in connection with the situation of their business, and what may be supposed to be their respective objects and wants." "The situation of the parties, the subject matter of their transactions and the whole language of their instrument, should have operation in settling the legal effect of their contract." *Sumner* v. *Williams*, 8 Mass., 162.

Although the language in this deed is at first view somewhat general and unlimited in the grant, yet there are several clauses and conditions, which, taken in connection with the situation of the parties and the property, lead us to think that the parties really intended a measure of power and not an unlimited grant.

There is running through the whole a manifest intent that the grantor should retain a part, if not the greater part, of the power, as a continuing and permanent right. He was the owner of a mill on the same dam, and it would be remarkable, if he had granted a right to an indefinite quantity of water, which might be so exercised as to destroy the value of his mill and privilege.

The right to draw water sufficient to carry on the tannery in said yard, is coupled with the condition that it is to be drawn "in common with said Hill," the grantor. This clause evidently does not refer to a use of the water for a common purpose, or to carry on a joint business, but to a

Covel *v.* Hart.

common right to draw water, which is indivisible, for their separate uses, according to their legal rights. The effect of this language, as bearing on the question before us, seems to be, that it indicates a continuing right in Hill, and negatives the idea that a time might come when the owner of the tanyard privilege would rightfully take all the water; for then there could be no " common" right to use the water. There is no indication that such a cessation of all right in the grantor was contemplated by the parties.

The provision respecting future repairs on the dam, whilst it may not be conclusive as to the amount of the power granted, yet serves to show that it was contemplated that there would always be, at least, two distinct privileges interested in the common dam, which was to be kept up for the use and benefit of both. It is also to be noticed that there is here no limitation as to time, nor any provision looking to a state of facts, when one party might cease to be beneficially interested in keeping up the dam. Nor is there any provision by which the proportions named in the deed should be altered, if the tanyard should claim and use more water than was then required to carry on the business. of the yard. If the parties had contemplated a varying quantity, and an indefinite extension of the works, they would have been likely to have provided for a change in the proportion of repairs. It is true that the parties might fix on any proportion, and that such rule would not be at all conclusive as a measure of the power granted, if that was otherwise clearly expressed and accurately defined, as in the case of *Deshon* v. *Porter*, before cited. But it is indicative of the fact that the parties did understand that a fixed quantity was granted, and that in this case, it was, in their apprehension, about one-fourth of the whole power, and not a changing and undefined grant, which might vary from year to year.

Again :— " The said Hill agrees that said Rollins may have the privilege of using more water than aforesaid, when there shall be waste water running over or around the said

dam." Now, if Rollins had, by the grant "aforesaid," a right to extend his works in that yard to any extent, and to use at will whatever amount of water was required, this grant of surplus or waste water would seem to be superfluous or unmeaning. He would not only have a right to this waste water, which would be what was not required by any or all the mills or works on both sides of the dam, but a prior right to all the water required by him. This stipulation in the deed as to waste water, implies that the quantity granted had been fixed and limited, and that this occasional surplus had been thrown in, in the nature of an additional grant. It is true that it was hardly required, if the water conveyed could only be used for tanning purposes, in that yard at the time, because so much had been granted absolutely and at all times, as a prior right, as we have before determined. But, if it was a measure of power and a given quantity, and not necessarily limited to a specific use, then this surplus might be of importance in the change of the mode of using. It would then be the amount of water required to operate the tanyard, as it then was, *plus* the waste water, when it was running over or around the dam, and all might be available if a change was made, from a tanyard, for instance, to a saw or grist-mill. In any view, this clause seems to favor the construction, that it was a measure of power, that the parties had in their minds at the time of the conveyance. *Pratt* v. *Lamson*, 2 Allen, 283.

The last clause seems still more decidedly to point in the same direction. In it, Hill reserves a right to increase machinery or mills on his privilege to any extent he may choose, and to use all the water " except what has herein been conveyed for the use of said tanyard." This reservation is certainly not easily reconciled with the idea of an unlimited grant of the entire power, in a certain contingency. It speaks of " *his* privilege," as a permanent right retained, and contains a distinct reservation of a right to increase his works at his pleasure, and to use all the water except what had been before conveyed in the deed. This is all consist-

ent with the idea that a limited and measured quantity had been specifically granted, but hardly reconcilable with the position, that the grantor had conveyed away the whole power, at the pleasure of the grantee. The right to enlarge is not to depend upon enlargement or non-enlargement of the tanyard. The language is not a right to enlarge his works, and to use all the water not needed for the tanyard, however much enlarged, but to " use all not herein granted for the use of *said* tanyard." This last clause, as well as the first, seems to refer to the existing tanyard and its actual condition and requirements. They speak of " carrying on *the* business of tanning in *said* yard,"—and of " the water conveyed for the use of *said* tanyard."

Viewing the actual state of things, the parties appear to have come to the conclusion that there would be a surplus of water, not required by the yard and the other mill or works on the dam. The excess, whatever it may be, Hill reserves, with a right to erect, at his pleasure and to any extent, new mills or machinery. This right he probably would have retained without the clause of reservation. But its insertion is evidence that he intended to grant only a specific and measured power, and not to deed away the whole, if his grantee chose to extend his yard or his works. The reservation in the latter case would be nugatory. As it stands, it seems to say,—I grant to you enough water for that tanyard, as it now is operated, but all the rest of the water, held by the dam, I reserve for my own use, for my present or future works on the dam. The language of the Court, in *Wyman* v. *Farrar*, 35 Maine, 71, is applicable to this case.—" It can hardly be presumed that a person purchasing" (or reserving) " a privilege on which to establish a manufacturing business, for the constant prosecution of which a constant water power was essential, would consent to the insertion of a reservation" (or grant) " in his deed, which would effectually negative the terms of his grant."

We have been referred to the case of *Deshon* v. *Porter*, (before cited,) as an authority for the grantee. The lan-

guage in that deed was, "likewise a water privilege for tan-
ning purposes in all its various branches." The question rais-
ed in that case was whether this was a measure of the quanti-
ty to be used, or a grant of water to be used only for tanning
purposes.   The amount did not seem to be in controversy.
The Court, in considering that question, remark, "the grantee
is not in the least restricted in his use of the water for that
purpose, but could enlarge his operations *ad libitum.*" But
the decision did not rest at all on this point.   It was not
the one about which that controversy arose.   The question
was whether the water granted could be used for any other
purpose than tanning.   The allusion to the unlimited nature
of the grant was to show that there could be no measure of
such unrestricted power.

But in that case there was no existing tannery which the
parties had in view, or to which the deed referred.   It was
a naked and absolute grant "of a water privilege for tanning
purposes in all its various branches."   There were no facts
to qualify or limit the generality of the grant.   The deed
did not, as in this case, contain clauses, reservations and
conditions from which any light could be gathered, as to the
intentions and meaning of the parties.   The grant was left
as one which the grantee might use to any extent, in any
tanyard which he might establish or extend on the privi-
leges.   It was, therefore, a case differing essentially from the
one at bar.

Our conclusion is that the grant must be regarded as a
measure of power, and be restricted, substantially to the
amount of water which was sufficient to carry on the busi-
ness of tanning in the yard, as it was carried on at the time
of the date of the deed from Hill, or at or about that time,
when in full operation in carrying on "the tannery in said
yard in its various branches."   And that the right has pri-
ority as before explained.

The case of *Covel & al.* v. *Hart & al.*, as presented, seems
clearly to present facts which, if proved, would entitle the
plaintiffs to a judgment in their favor, under the foregoing

decision. It affirms that the defendant has drawn water to such an extent that the plaintiffs could not work their tannery. This we understand refers to the tannery as existing at the date of the deed.

The allegations in the other suit, of *Hart* v. *Covel*, also present a case, which, if proved, would seem to entitle the plaintiffs to some damages. Therefore in each case the entry must be : — *Case to stand for trial.*

But the parties will probably be able to adjust all differences and to fix upon a mode of enjoying their respective rights, as herein determined, without further litigation.

APPLETON, C. J., CUTTING, WALTON, DICKERSON, DANFORTH and TAPLEY, JJ., concurred.